IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEREK LINDSEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-22-284 |
| CHUKWUMA NJOKU, et al., | * | |
| Defendants. | * | |

*** 

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Lt. Chukwuma Njoku and Warden B. Harris's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 18). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Motion will be granted in part and denied in part.

## I.      BACKGROUND

A.      **Lindsey's Allegations**

Plaintiff Derek Lindsey is a state prisoner currently housed at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland. (Compl. at 1, ECF No. 1). Lindsey raises claims pertaining to his prior incarceration at Jessup Correctional Institution ("JCI").

On November 22, 2020, Lindsey pleaded guilty to a disciplinary charge and received a disposition of 30 days "lock up time" and 60 days loss of good conduct credits. (Compl. at 2; Admin. Procedure Docs. at 4−5, ECF No. 1-1). Although JCI officials

purportedly should have released Lindsey from "lock up" on December 19, 2020, he remained confined. (Compl. at 2). Over seven months later, on July 29, 2021, Lindsey was provided with a written notice stating that he was placed on administrative segregation status. (Id.). The notice is dated July 28, 2021, and it says that Lindsey was assigned to administrative segregation on December 19, 2020 by Defendant Njoku Chukwuma. (Admin. Procedure Docs. at 2). The notice is incomplete, however, as it does not state the reason he is being held in administrative segregation. (Id.). The notice advises Lindsey that within five days of his placement, he will be seen by the case management team and given an opportunity to be heard on whether his administrative segregation should continue. (Id.).

On August 9, 2021, after Lindsey received written notification of his placement, he filed a grievance complaining that he was confined in administrative segregation since December 19, 2020 without proper written notice. (Id. at 4−5). In his grievance, Lindsey states that prison officials should have served the administrative segregation notice within 24 hours of placement in administrative segregation. (Id. at 5). On October 26, 2021, Defendant Warden Harris issued a grievance response stating that his grievance was investigated and found to be meritorious. (Id. at 1). Harris noted that "[s]upervision has been advised to make sure to give all inmates the proper paperwork in a timely manner when being placed on Administrative Segregation. As such no further action will be taken." (Id.).

**B.     Defendant Njoku and Harris's Response**

Njoku and Harris allege that Lindsey was issued a Notice of Inmate Rule Violation dated November 20, 2020 for a November 19, 2020 incident. (Investigative Report at 3,

ECF No. 18-3). The notice states that Lindsey questioned why an officer locked his tier down, yelled profanities, and indicated he was unhappy. (Id.). Lindsey then refused to leave the area, continued to be hostile, and threatened to beat up correctional officers. (Id.). On November 20, 2020, Lindsey was assigned to administrative segregation pending a formal disciplinary hearing. (Id.). Lindsey then waived his appearance before a hearing officer and pleaded guilty. (Id. at 1).

Njoku and Harris submitted an "Administrative Segregation Investigative Report" attached to their Motion. (Id.). The report states that on December 19, 2020, Lindsey was placed on administrative segregation because of the November 19, 2020 incident in which Lindsey threatened an officer. (Id.). The report was signed on July 29, 2021 by Njoku who is noted to be the "Investigator." (Id.). Njoku recommends that Lindsey be transferred to another facility. (Id.).

Njoku and Harris also provide a copy of the Notice of Assignment to Administrative Segregation that is similar to the notice Lindsey submitted. (Id. at 2). This copy is complete—it says that on December 19, 2020, Lindsey was placed in administrative segregation pending an investigation. (Id.). The Notice is dated July 28, 2021, and Lindsey signed the Notice acknowledging receipt on July 29, 2021. (Id.).

On October 7, 2021, Lindsey was transferred to Roxbury Correctional Institution ("RCI"). (Id. at 4).

**C.  Procedural History**

On February 18, 2022, the Court received Lindsey's Complaint naming Njoku and Harris as Defendants. (ECF No. 1). Lindsey challenges his placement in administrative

segregation without any procedural process for the period from December 19, 2020, through July 28, 2021, and seeks damages for wrongful confinement. (Compl. at 2).

On November 16, 2022, Njoku and Harris filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 18). The Court received Lindsey's Answer to Defendants' Motion to Dismiss on December 7, 2022. (ECF No. 25).[1]

## II.   DISCUSSION

### A.   <u>Standards of Review</u>

#### 1.   Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Though

---

[1] Lindsey's Response does not substantively respond to Njoku and Harris' Motion to Dismiss or, in the Alternative, for Summary Judgment, but rather addresses Njoku and Harris' delays in responding to service of the Complaint, and failure to file an Answer in this case. (<u>See</u> Resp. Opp'n Mot. Summ. J. at 1−2, ECF No. 22).

the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### 2.    Conversion & Extrinsic Evidence

Njoku and Harris' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Vol. Fire Dept. Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the

pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Here, the Court declines to convert the Motion into one for summary judgment. However, the Court will still consider the documents attached to the Complaint and the Motion. Ordinarily, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions, including documents attached to the complaint and the motion to dismiss, so long as they are integral to the complaint and authentic, see Fed.R.Civ.P. 10(c); Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). The documents that Lindsey, Njoku, and Harris attached to their pleadings pertain to Lindsey's placement in administrative segregation and his subsequent grievance. (See ECF Nos. 1-1, 18-3). There is no dispute that the documents are integral to the complaint and authentic, and thus the Court will consider them in its analysis of the Motion.

**B.   Analysis**

**1.   Due Process**

Initially, the Court notes that because Lindsey is self-represented, the Court must liberally construe his Complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Fed.R.Civ.P. 8(e) ("Pleadings must be construed so as to do justice."); see also Haines v.

Kerner, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers").

In his Complaint, Lindsey does not identify the constitutional provisions on which his claims are based, but he identifies Njoku and Harris' actions that he believes violated the law. He states that he was "punished" by not being released from administrative segregation after the expiration of his disciplinary time. (Compl. at 2). He further states that although his disciplinary sanction expired on December 19, 2020, he continued to be held in administrative segregation, and did not receive paperwork notifying him that he was being held for investigation, until over seven months had passed. (Id.). Lindsey also notes that when he filed a grievance pertaining to being held without notice, his grievance was found to be meritorious. (Id. at 2; Admin. Procedure Docs. at 1).

Liberally construing the Complaint, Lindsey claims that Njoku and Harris violated his rights under the Due Process Clause of the Fourteenth Amendment by holding him in administrative segregation for over seven months without any process. The due process claim requires a two-part analysis. First, Lindsey must establish that he had a protectable liberty interest in avoiding administrative segregation. Incumaa v. Stirling, 791 F.3d 517, 526 (4th Cir. 2015), amended (July 7, 2015). Second, if a liberty interest is identified, Lindsey must then establish that Njoku and Harris did not provide him with minimally adequate process to protect that liberty interest. Id.; see also Thorpe v. Clarke, 37 F.4th 926, 941 (4th Cir. 2022).

To establish a protectable liberty interest, plaintiffs must allege that confinement conditions "impose 'atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life,' provided they can first establish that interest 'arise[s] from state policies or regulations.'" Thorpe, 37 F.4th at 942 (quoting Incumaa, 791 F.3d at 526–27).

Njoku and Harris make only a passing reference to the due process claim.[2] They argue that to the extent that Lindsey alleges only that Njoku and Harris violated state policies and procedures, he has not adequately alleged a procedural due process claim. (Mot. at 7). Njoku and Harris are correct in this limited regard. See Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Clark v. Link, 855 F.2d 156, 163 (4th Cir. 1988) ("[A] section 1983 claim can only be sustained by allegations and proof of a violation of the Constitution or statutes of the United States and specifically may not rest solely on a violation of state statutes or qualify as a common law tort."). But Njoku and Harris fail to analyze the law further. They do not address whether Lindsey has adequately alleged that the conditions in administrative segregation are atypical and substantially harsh "in relation to the ordinary incidents of prison life" such that constitutional due process protections are then triggered. Sandin, 515 U.S. at 484.

---

[2] Instead of analyzing the due process claim, Njoku and Harris argue: (1) they are entitled to Eleventh Amendment immunity for claims brought against them in official capacity; (2) they are entitled to qualified immunity; (3) Lindsey has failed to allege a claim of unconstitutional conditions of confinement; (4) Lindsey has failed to plead supervisory liability; and (5) Lindsey has plead insufficient and conclusory facts and has failed to state a claim. (Mem. Supp. Mot. Dismiss Alt. Summ. J. ["Mot."] at 4−12, ECF No. 18-1).

Njoku and Harris have incorrectly framed Lindsey's claims under the Eighth Amendment standard for cruel and usual punishment and do not address the factors Lindsey must allege for a Fourteenth Amendment due process claim. Njoku and Harris discuss the Eighth Amendment standard as applied to incidents such as double bunking, lack of exercise, inadequate ventilation, and lack of showers. (Mot. at 7−11). Lindsey does not assert any facts of this nature. Thus, Njoku and Harris' argument is unavailing and the Court declines to create a defense on Njoku and Harris' behalf.

Accordingly, Njoku and Harris' Motion asserting that Lindsey has failed to allege unconstitutional conditions of confinement and otherwise failed to state a claim is denied without prejudice to renew, solely on Lindsey's Fourteenth Amendment due process claim.

### 2.    Official Capacity Claims

Next, Njoku and Harris assert that they are immune from claims brought against them in their official capacities under the Eleventh Amendment. (Mot. at 4−5). Lindsey does not specifically state whether he is bringing claims against Njoku and Harris in their individual or official capacities, or both. "When a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995).

Lindsey's Complaint alleges that Njoku assigned him to administrative segregation without any process and provides supporting written documentation. (Compl. at 2; Admin. Procedure Docs. at 2). Lindsey also provides documentation that Harris determined that the claims raised in his grievance had merit. (Compl. at 2; Admin Procedure Docs. at 1).

Lindsey does not allege that Njoku and Harris' actions were the policy or practice of the State or their agencies, which would indicate he is bringing suit against Njoku and Harris in their official capacity, and he seeks solely damages which are unavailable in an official capacity suit. See Biggs, 66 F.3d at 61.

Therefore, based on a review of the Complaint, the Court finds that Lindsey intends to bring claims against Njoku and Harris in their individual capacity only, and thus declines to address the defense that Njoku and Harris are immune from suit in their official capacity.

### 3.      Personal Participation and Supervisory Liability

Njoku and Harris contend that the Complaint should be dismissed as to both Njoku and Harris because Lindsey fails to allege that either defendant personally participated in violating his constitutional rights. (Mot. at 11–12). At bottom, the Court finds that Lindsey successfully alleges personal participation by Njoku but not Harris.

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive

knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Here, as to Njoku, Lindsey seeks to hold him liable for assigning him to administrative segregation without any process. He attaches to his Complaint the Notice of Assignment to Administrative Segregation with the placement made by Njoku and references the Notice in his Complaint. (Compl. at 2, Admin. Procedure Docs. at 2). Further, Njoku and Harris provide the Administrative Segregation Investigative Report that identifies Njoku as the Investigator assigned to the matter. (Investigative Report at 1). This document states that Lindsey was placed in administrative segregation on December 19, 2020, and Njoku issued the report on July 29, 2021. (Id.). Contrary to Njoku and Harris' assertion, Lindsey has adequately plead personal participation as to Defendant Njoku and this claim may go forward.

As to Defendant Harris, Lindsey fails to allege personal participation. Lindsey filed his grievance on August 8, 2021, after he had already received notice of placement in administrative segregation on July 29, 2021. (Admin. Procedure Docs. at 4). Harris then determined that Lindsey's grievance had merit and counseled staff to timely issue notices of placement in administrative segregation. (Id. at 6). Lindsey has alleged no other facts to suggest that Harris was "personally" involved in the alleged constitutional violation. These

allegations are insufficient to allege that Harris either individually or in a supervisory capacity participated in the failure to provide Lindsey with notice and process related to his placement in administrative segregation, or that Harris is responsible for the placement due to his supervisory status. See Whitehurst v. Dovey, No. GJH-20-0484, 2022 WL 952027, at *6 (D.Md. Mar. 30, 2022) ("Under § 1983, individual liability must be based on personal conduct . . . The mere fact that [defendant] denied [a] grievance does not alone impose liability." (quoting Atkins v. Md. Div. of Corr., No. PWG-14-3312, 2015 WL 5124103, at *6 (D.Md. Aug. 28, 2015))). Here, Harris found the grievance to be meritorious and took action to correct supervisory behavior going forward.

Accordingly, the Motion will be granted as to Lindsey's claims against Harris and denied as to his claims against Njoku.

### 4.    Qualified Immunity

Njoku and Harris raise the defense of qualified immunity. (Mot. at 5−7). They generally provide the legal standard for the Court to determine if they are entitled to qualified immunity, but fail to apply the law to the facts of the case. In addition, as the Court has noted above, Njoku and Harris have failed to properly identify and substantively address Lindsey's cause of action. At this juncture, the Court declines to analyze a defense that Njoku and Harris have asserted based on an incorrect legal theory, and without application to the record.

### III.    CONCLUSION

For the foregoing reasons, Njoku and Harris' Motion will be granted in part and denied in part. A separate Order follows.

Entered this 7th day of June, 2023.


_____/s/_____
George L. Russell, III
United States District Judge